IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| BRENDA K. PYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CV-385 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

This is an action for judicial review of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 17] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 14] will be denied.

I.

*Procedural History*

Plaintiff was born in 1956. [Tr. 69]. She applied for benefits in January 2004, claiming to be disabled by depression, anxiety, and constant pain. [Tr. 69, 96, 98].[1] Plaintiff alleged a disability onset date of September 26, 2002 [Tr. 69] which coincides with the date

---

[1] Although plaintiff's SSI application is not included in the administrative record, the Commissioner does not contest that the application was in fact filed. [Tr. 19; Doc. 18, n. 1].

that she was laid off from her last job. [Tr. 374]. The applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in November 2005.

In January 2006, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from "a hiatal hernia, gastritis, depression, anxiety, headaches and osteoarthritis," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 21]. The ALJ found plaintiff's subjective complaints to be not fully credible in light of her activity level and her receipt of unemployment insurance benefits after the onset of her alleged disability. [Tr. 21-22]. The ALJ found plaintiff to have a residual functional capacity ("RFC") at the light level of exertion with limitations in "frequent contact with the public, more than simple instructions, frequent bending, stooping and squatting[,] and excessive vibrations." [Tr. 26]. Relying on vocational expert testimony, the ALJ concluded that plaintiff remains able to perform a significant number of jobs. [Tr. 25-26]. She was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, review from the Commissioner's Appeals Council, despite the submission and consideration of additional documents. [Tr. 5, 8, 355-70]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background*

Plaintiff's past relevant work is as a sewing machine operator. [Tr. 82-83]. As noted, she stopped working on September 26, 2002, due to a plant closing. [Tr. 312, 374]. Although she alleges a disability onset of September 2002, plaintiff applied for and received unemployment compensation benefits from that month through September 2003. [Tr. 382].

Plaintiff claims constant arm, back, and right leg pain that becomes "severe" whenever she does "anything." [Tr. 96]. She allegedly cannot stand in one spot at all. [Tr. 379]. Plaintiff relates her depression and anxiety to her husband's health and to marital and family strife. [Tr. 98, 281-95].

Plaintiff is admittedly able to independently sweep, mop, vacuum, shop, wipe tables, care for her purportedly ill husband, drive, clean mirrors, babysit her grandchildren, go to "a dance club," wash clothes, attend church every other week, and cook dinner nightly for herself, her husband, her two sons, their wives, and their children. [Tr. 99-102, 168, 304, 344]. Although she purportedly must "take <u>many</u> breaks" in order to accomplish her household chores [Tr. 101] (plaintiff's emphasis), she testified that she can sweep for an hour at a time without resting. [Tr. 380].

III.

*Relevant Medical Evidence*

A. <u>Physical</u>

According to the notes of Dr. Kenneth Luckmann, a 2002 esophagogastroduodenoscopy indicated a hiatal hernia and mild chronic gastritis. [Tr. 140]. In March 2003, Dr. Luckmann wrote that plaintiff was "[d]oing quite well with no major complaints or problems." [Tr. 139]. In September 2003, treating physician Trent McNeeley noted that plaintiff "has had gastritis in the past." [Tr. 194].

At the same appointment, Dr. McNeeley recorded plaintiff's complaints of arthralgias involving her neck and elbows. [Tr. 194]. Musculoskeletal examination was "unremarkable," and Dr. McNeeley diagnosed "probable osteoarthritis." [Tr. 194]. The following month, Dr. McNeeley wrote that "[h]er joint symptoms totally resolved" with medication, but that the medicine was possibly causing indigestion. [Tr. 193]. Medication was discontinued, and three weeks later both the indigestion and the arthralgias were "resolved." [Tr. 193].

In December 2003, plaintiff complained of a two-week history of pain and stiffness in her lower back. [Tr. 192]. Noting mild lumbar tenderness, Dr. McNeeley diagnosed a mild strain. [Tr. 192]. In January 2004, plaintiff again reported arthralgias in the neck, elbows, and knees. [Tr. 192]. Physical examination and bone density studies were unremarkable. [Tr. 192]. Dr. McNeeley "suspect[ed] that her symptoms are all associated

with degenerative joint disease." [Tr. 192].

In May 2004, plaintiff complained of pain in her hands and legs. [Tr. 189]. She was referred to rheumatologist Jeffrey Scheib. That physician's records contain miscellaneous test results and essentially illegible office notes. [Tr. 215-224].

In June 2004, plaintiff reported to the emergency room with pain complaints. [Tr. 237]. Dr. James Henry noted some joint and muscle tenderness. [Tr. 237]. There was no acute joint swelling, bilateral grip strength was good, and motor function in all extremities appeared normal. [Tr. 237]. Dr. Henry concluded that, "The etiology of her symptoms is not clear cut. . . . I suspect they are more related to chronic depression and perhaps fibromyalgia than anything else. She is already on appropriate medication in my opinion." [Tr. 237].

Following an August 2004 episode at a Home Depot where "9 boxes of hardwood fell off buggy, slid down front of rt leg and landed on rt foot," images were taken of the right foot and leg. [Tr. 234-36]. There was "no acute bony injury." [Tr. 235-36].

Plaintiff first visited Dr. Manisha Thakur in August 2004, complaining of "tremendous" right arm pain and requesting a refill of her anxiety medication. [Tr. 270]. Dr. Thakur noted tenderness at both elbows. [Tr. 270]. Plaintiff continued to report right foot pain secondary to the hardwood flooring incident. Dr. Thakur noted tenderness but no swelling, and an additional x-ray was negative for fractures. [Tr. 269, 272].[2]

---

[2] Dr. Thakur's file also contain an October 1, 2004 record describing chronic back pain and probable carpal tunnel syndrome. [Tr. 267]. However, this record clearly pertains to a patient with a different name, date of birth, and account number and has thus not been considered by the court.

5

In November 2004, Dr. Thakur again noted tenderness and decreased range of motion in the right elbow. [Tr. 266]. Dr. Thakur injected the elbow in January 2005. [Tr. 265]. At a follow-up appointment, plaintiff reported that the injection helped "but she continues to have pain in the knees and shoulders." [Tr. 263]. Dr. Thakur found no major joint swelling and recorded no other significant skeletal abnormalities. [Tr. 263].

At a March 2005 appointment with orthopaedist Ronald French, plaintiff reported that the injection had helped her right elbow substantially. [Tr. 331]. Dr. French diagnosed only "[m]ild lateral epicondylitis right elbow, improving" and recommended no further treatment. [Tr. 331].[3] Plaintiff reported that her symptoms had returned the following month. [Tr. 330]. Dr. French noted tenderness and again injected the elbow. [Tr. 330]. He performed a repeat injection in June 2005. [Tr. 329].

That same month, plaintiff reported leg and knee pain which was "becoming more severe." [Tr. 318]. Dr. Thakur's examination noted only "mild" bilateral knee crepitation. [Tr. 318]. At July and August 2005 appointments, plaintiff reported that knee and leg pain were better, but that she had pain in her lower back. [Tr. 316]. Dr. Thakur's notes from these appointments contain no objective findings regarding plaintiff's back. [Tr. 315-16].

Regarding plaintiff's knee complaints, orthopaedist French found no effusion, tenderness, or swelling. Range of motion was full, with only "mild" crepitation noted. Quad

---

[3] Epicondylitis is colloquially known as "tennis elbow." *Dorland's Illustrated Medical Dictionary* 605 (29th ed. 2000).

strength was intact, and x-rays "demonstrate[d] no significant abnormalities." [Tr. 329].

In September 2005, Dr. French noted that plaintiff was "doing excellent with her elbow but now having pain [and cramping] in her lower legs." [Tr. 328]. Examination was unremarkable except for mild diffuse tenderness in the calves. [Tr. 328]. Plaintiff's complaints continued over the next month. Orthopaedist French's objective findings remained unremarkable. [Tr. 326-27].

B. Mental

In September 2003, physician McNeeley noted "situational" anxiety disorder. [Tr. 194]. The following month, plaintiff told him that her anxiety and depression were well-controlled with medication. [Tr. 193].

Plaintiff appeared at the emergency room in March 2004, with complaints of stress, depression, tearfulness, vomiting, and dizziness. [Tr. 257]. She reported that her depression had increased over the previous two months. [Tr. 252]. Plaintiff was referred to Ridgeview Psychiatric Hospital for an evaluation, where she stated that she was "about to have a nervous breakdown." [Tr. 304]. She related her stress to caring for her husband, her sons, and their families. [Tr. 304]. Plaintiff had a follow-up medication management appointment the following month and again reported that her main problem was worrying about her husband and her family. [Tr. 301].

Three days later, psychological examiner Alice Garland performed a mental status examination. Plaintiff claimed to suffer from panic attacks and suggested that an

7

attack was imminent during the examination. However, Ms. Garland wrote that, "She seemed histrionic today, not on the verge of a panic attack." [Tr. 166]. Plaintiff exhibited memory difficulties. [Tr. 167]. Ms. Garland estimated plaintiff's intelligence to be "borderline." [Tr. 167]. The diagnostic impression was major depressive disorder, moderate. [Tr. 168]. Ms. Garland concluded that "the claimant appears to be limited in the ability to [perform] detailed and complex work. The ability to persist and concentrate was severely limited today. Ability to get along with people appears to be moderately limited. Ability to work with the public and adaptation appears to be moderately limited." [Tr. 169].

Edward Sachs, Ph.D. performed a Mental RFC Assessment in April 2004, predicting no more than moderate limitation in seven vocational capacities. [Tr. 170-72]. Moderate, rather than marked, limitations were predicted in part due to plaintiff's wide range of independent daily activities. [Tr. 185]. James Walker, Ph.D. performed a Mental RFC Assessment in June 2004. He predicted no more than moderate limitation in eight vocational areas. [Tr. 197-98].

Plaintiff returned to Ridgeview for counseling in October 2004. [Tr. 297]. She reported increased depression and anxiety related to financial stressors and her husband's health. [Tr. 295]. Plaintiff began a series of counseling sessions with Dr. Marc Castellani. Over the next three and a half months, she saw Dr. Castellani on a weekly or biweekly basis, primarily discussing her husband's purported illness, his continuing history of infidelity, and her "selfish" children. [Tr. 281-94]. On one occasion, plaintiff became "tearful and

anxious" when her phone rang because "she always expected bad news about her husband." [Tr. 291]. At several appointments, plaintiff reported doing well and that therapy was very helpful. [Tr. 281-84, 288, 290].

On February 14, 2005, Dr. Castellani completed an Assessment of Mental Limitations. He opined that plaintiff's abilities were "usually precluded" as to concentration, persistence, pace, timeliness, and dealing with ordinary work stresses. He further opined that seven other categories were at times limited or precluded, and that plaintiff has "no useful ability" to work at a consistent pace for acceptable periods of time. [Tr. 278-80]. Dr. Castellani explained his assessment as follows:

> Ms. Pyles is so distracted and agitated over her husband's health – in addition to other less severe stressors – that she is often unable to complete necessary tasks. . . . Ms. Pyles easily becomes verbally aggressive due to anxiety and worry. Even minor additional stressors cause Ms. Pyles to become anxious, depressed and irritable. I have worked with Ms. Pyles for several months, and have seen first-hand her serious decomposition when her husband has medical complications, which is a regular occurrence. Even receiving an unexpected phone call caused Ms. Pyles to become tearful and start shaking until she found out the purpose of the call. I do not believe that Ms. Pyles could adequately manage employment in her current state.

[Tr. 280].

Less than three months after Dr. Castellani's assessment, plaintiff told him that she had dramatically improved. [Tr. 344]. She felt that she now needed therapy on a less frequent basis. [Tr. 344]. Over the next five months, plaintiff and Dr. Castellani had only four counseling appointments, and continued improvement was noted. In October 2005, both plaintiff and Dr. Castellani agreed that all treatment goals had been met and that "she does

9

not currently require further treatment." [Tr. 338]. Nonetheless, at her administrative hearing the following month, plaintiff testified that she remained disabled by depression and anxiety. [Tr. 375-77, 381].

IV.

*Vocational Expert Testimony*

At the administrative hearing, Katharine Bradford ("Ms. Bradford" or "VE") testified as a vocational expert. Ms. Bradford classified plaintiff's prior job as generally light and semiskilled, but medium as it was performed by plaintiff. [Tr. 386].

The ALJ posited a hypothetical claimant of plaintiff's age, education, and work history capable of no more than light exertion. The hypothetical claimant would be further limited by

> hiatal hernia, gastritis, mental depression, mental anxiety, headaches, and osteoarthritis resulting in an inability to handle frequent contact with the general public, inability to learn, understand, and carry out more than simple job instructions, inability to handle excessive vibration, inability to perform frequent bending and stooping, and an inability to perform frequent squatting.

[Tr. 386]. In response, the VE identified a significant number of jobs in the regional and national economies that the hypothetical claimant could perform. [Tr. 386-87]. The job base would be reduced to some degree by: inability to work around heights or dangerous machinery; a sit/stand requirement; moderate pain; or moderate fatigue. [Tr. 388-90]. All employment would be precluded by: excessive absences or breaks; more than moderate pain or fatigue; or the full acceptance of plaintiff's subjective complaints. [Tr. 388-91].

V.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[4]  Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

---

[4] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

VI.

*Analysis*

Plaintiff contends that "[t]he Commissioner's decision below should be reversed outright, and payment of benefits ordered, because the record overwhelmingly supports disability in this case." Plaintiff offers three discernable theories in support of her position. The court will address these arguments in turn.

A. <u>Treating Source Opinion</u>

Plaintiff contends that the ALJ erred in not fully adopting the restrictive assessment of Dr. Castellani. The court disagrees.

The ALJ sufficiently, and correctly, explained that Dr. Castellani's extreme opinion is inconsistent with his treatment notes as a whole. [Tr. 22, 24]. The assessment was generated after less than four months of counseling and spoke to plaintiff's capacity "in her current state." [Tr. 280]. Shortly thereafter, dramatic improvement was reported. [Tr. 344]. Frequency of counseling was significantly reduced. By October 2005, both plaintiff and Dr. Castellani agreed that all treatment goals had been met and that "she does not currently require further treatment." [Tr. 338].

Plainly, Dr. Castellani's file does not support the existence of an impairment lasting (or expected to last) for a period of at least twelve months. Instead, his record as a whole offers substantial evidence that plaintiff's emotional complaints - like most of her physical conditions - are episodic and responsive to treatment. The court finds no error in

13

the rejection of Dr. Castellani's assessment.

## B. Credibility

Plaintiff next argues that the ALJ erred in finding her a less than credible witness. Plaintiff specifically challenges the references to her activity level and unemployment benefits.[5]

The court views plaintiff's activity level, as compiled at page three of this opinion, as far more consistent with the ALJ's RFC findings than with plaintiff's extreme subjective complaints. For example, it is inconceivable that a person with plaintiff's purported disability could sweep for an hour at a time without stopping. [Tr. 380].

Regarding plaintiff's acceptance of unemployment compensation during a one year period in which she now claims to have been disabled, plaintiff does correctly note that the receipt of such benefits does not alone prove an ability to work. *See, e.g., Voss v. Sec'y of Health & Human Servs.*, No. 87-2069, 1988 WL 117148, at *2 (6th Cir. Nov. 4, 1988).

---

[5] The ALJ wrote:

The claimant's subjective complaints are not credible to the extent alleged. She has made inconsistent claims. The claimant claims she is disabled and unable to sustain more than a severely restricted range of sedentary exertion since September 28 [sic], 2002. However, she has frequently engaged in activities that are inconsistent with her complaints. The claimant testified she received unemployment compensation benefits for fifty two weeks after the company she was working for closed the factory. By accepting unemployment compensation benefits, the undersigned notes the claimant was essentially saying she was holding herself as willing and able to work but unable to find a job.

[Tr. 21-22].

Acceptance of unemployment benefits does, however, impact the issue of credibility. *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 801-02 (6th Cir. 2004); *Allen v. Apfel*, 3 Fed. App'x 254, 257 n.4 (6th Cir. 2001); *Bowden v. Comm'r of Soc. Sec.*, No. 97-1629, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999). "Applications for unemployment and disability benefits are inherently inconsistent." *Workman*, 105 Fed. App'x at 801. "There is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work." *Id.* at 801-02 (citations and quotations omitted).[6]

For these reasons, substantial evidence supports the conclusion that plaintiff is a less than credible claimant.

## C. Sentence Six Remand

Lastly, plaintiff's briefing to this court references an April 2006 Medical Opinion Form completed by Dr. Thakur. [Tr. 362-64]. The form was completed approximately three months after the ALJ's decision. It was submitted to, and considered by, the Appeals Council, which nonetheless denied plaintiff's request for review. [Tr. 5-6, 8]. Plaintiff now argues that Dr. Thakur's opinion - which, obviously, was not before the ALJ - somehow renders the ALJ's decision "unsupported by substantial evidence."

---

[6] To apply for and receive unemployment compensation, a claimant must in part be "able to work, available for work, and making a reasonable effort to secure work." Tenn. Code Ann. § 50-7-302(a)(4) (2005). There exists a disability exception to this requirement, *see* Tenn. Code Ann. § 50-7-302(a)(4)(A) (2005), but plaintiff makes no argument that the exception applies to her case.

15

"[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). This court can, however, remand a case for further administrative proceedings, but only if the claimant shows that her evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). *Id.* Sentence six mandates that, before a claim will be remanded for consideration of additional evidence: there must be new evidence presented; that evidence must be material; and there must be good cause for the failure to present it at the hearing level. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The claimant bears the burden of proof. *Id.*

Although she is represented by an experienced law firm, plaintiff's brief to this court makes no mention of sentence six or its three-pronged test. The issue is thus waived. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has not only failed to make a showing of good cause, but also has failed to even cite this relevant section or argue a remand is appropriate."); *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

In the alternative, the court finds no good cause for the late submission of Dr. Thakur's report. In requesting out-of-time review by the Appeals Council, one of plaintiff's

16

attorneys stated that plaintiff had been "waiting for" Dr. Thakur's assessment which had been sought for the specific purpose of bolstering the appeal of the ALJ's decision. [Tr. 357]. Such a circumstance in no way demonstrates good cause under sentence six. Plaintiff had been treated by Dr. Thakur for approximately seventeen months prior to the ALJ's decision. She had ample time to obtain an assessment. She also could have asked the ALJ to hold the record open for an additional time. This, too, plaintiff failed to do.[7]

In sum, plaintiff has waived the issue of sentence six remand, has failed to demonstrate "good cause," and, at least in part, has failed to demonstrate materiality. If plaintiff is indeed requesting sentence six remand, that request will be denied.

An order consistent with this opinion will be entered.


ENTER:


s/ Leon Jordan
United States District Judge

---

[7] Without addressing the content of Dr. Thakur's form, the court notes that at least some of the late-submitted documentation also fails sentence six's materiality test. On the issue of credibility, it is noted that in her additional evidence plaintiff admits obtaining her 2002 mail order high school equivalency diploma by deceptive means. [Tr. 12, 356]. This information, if available to the ALJ, would undoubtedly have further undermined plaintiff's credibility. *See Sizemore*, 865 F.2d at 711 (Evidence is material only if the claimant demonstrates a reasonable probability that the Commissioner would have reached a different conclusion if presented with the evidence.).